LEE LITIGATION GROUP, PLLC
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DEXLON CHARLES,<br>*on behalf of himself, FLSA Collective Plaintiffs,*<br>*and the Class,*<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>PINNACLE TOO, LLC,<br>　　d/b/a PINNACLE ELECTRIC,<br>AGIR ELECTRICAL, LTD.,<br>　　d/b/a PINNACLE ELECTRIC,<br>FRANKCRUM 6, INC.<br>　　d/b/a FRANKCRUM<br>FRANK CRUM JR. and<br>ANTONY GIRONTA,<br><br>　　　　　　　　Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION**<br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, DEXLON CHARLES ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants  PINNACLE TOO, LLC.,  d/b/a PINNACLE ELECTRIC, AGIR ELECTRICAL, LTD., d/b/a PINNACLE ELECTRIC, FRANKCRUM 6, INC. ("Corporate Defendants") FRANK CRUM JR. and ANTONY GIRONTA ("Individual Defendants" and collectively "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime compensation, due to time-shaving, (2) unpaid wages due to invalid rounding, (3) unpaid wages from compensable break time, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime compensation, due to time-shaving, (2) unpaid wages due to invalid rounding, (3) unpaid wages from compensable break time, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Plaintiff additionally alleges that Defendants unlawfully retaliated against him, in violation of the FLSA and NYLL and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

4.      Plaintiff further alleges that, pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), he and similarly situated individuals are entitled to recover from Defendants for discrimination on the basis of national origin: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages, and (5) attorney's fees and costs.

5.      Moreover, Plaintiff alleges that, pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYHRL") and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), he is entitled to recover

from Defendants for creating and fostering a hostile work environment through persistent sexual harassment against Plaintiff, and he is entitled to recover: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391, as Defendants perform substantial business in this district.

## PARTIES

8.      Plaintiff DEXLON CHARLES is a resident of Kings County of New York.

9.      Defendant ANTONY GIRONTA owns and operates an electrical and wiring company under the trade name "Pinnacle Electric" through Corporate Defendants PINNACLE TOO, LLC and AGIR ELECTRICAL LTD with an office located at 130-45 91st Ave, Jamaica, NY 11418.

a) Due to the nature of the business, Plaintiff, FLSA Collective Plaintiffs, and Class members, perform work at Defendants' client's premises under the direct control of Individual Defendant ANTONY GIRONTA.

b) Corporate Defendants AGIR ELECTRICAL, LTD., and PINNACLE TOO, LLC., both operate as "Pinnacle Electric." *See* **Exhibit A at 12:20-21; 14:14-15; Exhibit B.**

c) Corporate Defendants AGIR ELECTRICAL, LTD., and PINNACLE TOO, LLC. operate as a single integrated enterprise under the common control of

Individual Defendant ANTONY GIRONTA. Specifically, Individual Defendant ANTONY GIRONTA manages and oversees Pinnacle Electric.

d)  Defendants have a centralized Human Resources that deals with hiring, firing, and administering all of Pinnacle Electric's work force.

e)  Defendants implement the same wage and hour policies for all of their employees.

f)  Defendants further utilize the same employee handbook for all employees.

g)  Furthermore, Defendants have a single and common website http://www.pinnacleelectric.org/.

10.     Corporate Defendant, AGIR ELECTRICAL, LTD., d/b/a PINNACLE ELECTRIC is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 130-45 91st Ave, Richmond Hill, NY 11418. *See* **Exhibit B; Exhibit C**.

11.     Corporate Defendant, PINNACLE TOO, LLC., d/b/a PINNACLE ELECTRICAL is a domestic limited liability company organized under the laws of New York, with a principal place of business and an address of service of process located at 130-45 91st Ave, Richmond Hill, NY 11418. *See* **Exhibit A** at 66:21-23; **Exhibit D**.

12.     Corporate Defendant FRANKCRUM 6, INC. is a foreign business corporation organized under the laws of Florida, with a principal place of business and an address for service of process at 100 S. MISSOURI AVENUE, BUSINESS AFFAIRS, CLEARWATER, FL, UNITED STATES, 33756. *See* **Exhibit E.**

13.     Individual Defendant ANTONY GIRONTA is the principal and executive officer of Corporate Defendants AGIR ELECTRICAL, LTD., and PINNACLE TOO, LLC. *See* **Exhibit**

**A** at 66:21-23; **Exhibit C**. Defendant ANTONY GIRONTA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant ANTONY GIRONTA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees could complain to Defendant ANTONY GIRONTA directly regarding any of the terms of their employment, and Defendant ANTONY GIRONTA had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly.

14.     Individual Defendant FRANK CRUM JR. is the Chief Executive Officer of Corporate Defendant FRANKCRUM 6, INC. *See* **Exhibit E**. Defendant FRANK CRUM JR. exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant FRANK CRUM JR. exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees could complain to Defendant FRANK CRUM JR. directly regarding any of the terms of their employment, and Defendant FRANK CRUM JR. had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly

15.     Defendants PINNACLE TOO, LLC, d/b/a PINNACLE ELECTRIC, AGIR ELECTRICAL, LTD., d/b/a PINNACLE ELECTRIC, ANTONY GIRONTA, FRANKCRUM 6, INC., and FRANK CRUM JR. were joint employers of Plaintiff.

a.   Corporate Defendant FRANKCRUM 6, INC. was a "Professional Employer Organization" ("PEO") which leased out employees to Defendants PINNACLE TOO, LLC, and AGIR ELECTRICAL, LTD.

b.   Corporate Defendant FRANKCRUM 6, INC. and Corporate Defendants PINNACLE TOO, LLC, and AGIR ELECTRICAL, LTD. were under a "co-employment agreement" where the "client company maintains direction and control over employees (to hire, fire, discipline, determine duties, set wages, etc.), the PEO becomes the "employer of record," responsible for a set of clearly defined administrative functions." "For the duration of the co-employment agreement, the client company places its existing employees and subsequent hires on the PEO's payroll for tax purposes. This practice is referred to as "employee leasing." It enables the PEO to perform administrative duties on behalf of the client. At the same time, the employees continue to perform their work for the client company, as usual. Nothing changes in daily operations, but behind the scenes the client company has a wealth of support and expertise in play." *See* **Exhibit F**.

c.   Corporate Defendant FRANKCRUM 6, INC. is responsible for Defendants PINNACLE TOO, LLC's and AGIR ELECTRICAL, LTD's, payroll administration, human resources services, workers compensation insurance,

healthcare and employee benefits, retirement savings plans and government compliance assistance. *See* **Exhibit F**.

    d.    Corporate Defendant FRANKCRUM 6, INC. issued Plaintiff's checks and issued and filed Plaintiff's W-2 Wage and Tax Statements. *See* **Exhibit G**.

    e.    Defendants PINNACLE TOO, LLC, AGIR ELECTRICAL, LTD., and ANTONY GIRONTA were responsible for Plaintiff's day-to-day work schedule, daily tasks, and job duties.

16.    At all relevant times, Corporate Defendants were and continue to be "enterprises engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

17.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.    Plaintiff DEXLON CHARLES brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, (including but not limited to helpers, journeymen electricians, laborers, technicians, assemblers, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

19.    At all relevant times, Plaintiff DEXLON CHARLES and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiff DEXLON CHARLES and FLSA Collective Plaintiffs for (i) their proper wages, including overtime, due to a policy of time-

shaving, (ii) their proper wages for all hours due to a illegal policy of rounding hours, and (iii) their wages for compensable breaks of twenty (20) minutes or less. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

21.     Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt employees, (including but not limited to helpers, journeymen electricians, laborers, technicians, assemblers, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

22.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

24.    Plaintiff DEXLON CHARLES claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices of Defendants, including (i) failing to pay wages, including overtime compensation, due to time-shaving, (ii) failing to pay wages due to an improper policy of rounding, (iii) failing to pay wages for compensable break time, (iv) failing to provide wage statements in compliance with the New York Labor Law, and (v) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

25.    Plaintiff DEXLON CHARLES is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff DEXLON CHARLES is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

26.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit

against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

b)  What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

d)  Whether Defendants properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e)  Whether Defendants paid Plaintiff and the Class members the overtime premium at one-and-one-half times their regular hourly rates for all hours worked in excess of forty (40) each workweek;

f)  Whether Defendants operated their business with a policy of failing to pay Plaintiff and the Class members for all hours worked due to a policy of time-shaving;

g)  Whether Defendants properly compensated Plaintiff and Class members for short, compensable breaks of twenty (20) minutes or less.

h)  Whether Defendants operated their business with a policy of failing to provide compensation for all hours worked due to an improper policy of rounding Class Members compensable time down to Class Members detriment.

    i)    Whether Defendants provide to Plaintiff and the Class members proper wage and hour notices at date of hiring as required under the New York Labor Law.

    j)    Whether Defendants provided proper wage statements informing Plaintiff and Class members of their proper overtime rate of compensation and other information required to be provided on wage statements with each payment of wages, as required under the New York Labor Law.

## STATEMENT OF FACTS

*Wage and Hour Allegations*

29.    In or around September 2016, Plaintiff DEXLON CHARLES was hired by Defendants to work as a journeyman electrician for Defendants' Pinnacle Electric. Plaintiff's employment with Defendants terminated on or about March 4, 2022.

30.    Throughout his employment Plaintiff was assigned to various job sites to work at for Defendants. From the start of his employment to in or around January 2018, Plaintiff worked in a Long Island City Job site. From January 2018 to in or around May 2021, Plaintiff was assigned to work at the job site located at 11 Hoyt Street, Brooklyn, NY 11201. From May 2021 through the end of his employment, Plaintiff was assigned to work at the job site located at 295 5th Avenue, New York, NY 10016.

31.    Throughout his employment with Defendants, Plaintiff DEXLON CHARLES was scheduled to work five (5) days per week from 7:00 a.m. to 6:30 p.m. Regardless of his schedule, at least twice per week, Plaintiff was required to continue working until 9:00 p.m. Similarly, FLSA Collective Plaintiffs and Class members worked shifts of similar lengths and were likewise required to work past their scheduled shift at least twice per week.

32.     From the start of his employment to in or around January 2018, Plaintiff was compensated at a rate of twenty-three ($23) dollars per hour. From January 2018 to March 4, 2022, Plaintiff was compensated at a rate of twenty-six ($26) dollars per hour.

33.     Throughout Plaintiff's employment, Defendants failed to compensate Plaintiff for all his worked hours due to Defendants' time shaving policies. On a regular basis, Defendants did not compensate Plaintiff for all his worked hours. It was and is Defendants common practice to arbitrarily deduct from Plaintiff's paycheck between two (2) to four (4) hours per week, resulting in unpaid overtime hours. Similarly, FLSA Collective Plaintiffs and Class members suffered from Defendants arbitrary deductions.

34.     Moreover, during his employment with Defendants, Plaintiff was provided an unpaid break of fifteen (15) minutes, which Defendants called "Coffee time", and which was automatically deducted from Plaintiff's hours. However, under Federal and State law, this break time should have been considered as compensable work hours that should be included in the sum of Plaintiff's hours worked during the workweek. As a result, Plaintiff was victim of Defendants' policy of failing to compensate him for one hour and fifteen minutes (1.25 hours) every workweek. Similarly, FLSA Collective Plaintiffs and Class Members were also subject to this policy of failing to pay wages in violation of the FLSA and NYLL.

35.     Furthermore, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff CHARLES was required to work though his meal break on a daily basis, resulting in unpaid wages for two and a half (2.5) hours per week. Similarly, FLSA Collective Plaintiffs and Class members were not permitted to take a free and clear meal break.

36.     Defendants furthermore implemented a policy of detrimentally rounding down employee's hours.  When Plaintiff, FLSA Collective Plaintiffs, and Class members arrived to work a few minutes late, Defendants automatically rounded employees start time to the nearest half-hour. i.e. when Plaintiff CHARLES arrived to work at 7:05 a.m., Defendants noted Plaintiff's worked time as if he began at 7:30 a.m. As a result, Defendants impermissibly rounded Plaintiff's time down to his detriment and never to his benefit. Defendants similarly always rounded down FLSA Collective Plaintiffs' and Class Members' hours to their detriment and never to their benefit.

37.     Defendants never provided Plaintiff with a proper wage notice as required by the NYLL. Similarly, Class Members were never provided with proper wage notices.

38.     Defendants did not provide Plaintiff with proper wage statements at all relevant times. Similarly, Class members did not receive proper wage statements, in violation of the NYLL.

***Retaliation Allegations***:

39.     During his employment with Defendants, Plaintiff suffered from Defendants' retaliatory practices. Despite the fact that employees have the protected right to raise any work-related issue to their employers under the FLSA and the NYLL, Defendants retaliated against Plaintiff and ultimately terminated him for his complaints regarding his missing wages and Defendants sub-standard safety protocols.

40.     Plaintiff, after observing that his paystubs did not correspond with his actual worked hours, raised this issue of missing wages with Defendants. After complaining about Defendants non-payment of wages, instead of fixing the issue or explaining a misunderstanding, Defendants sought out any reason to terminate Plaintiff.

41.     On another occasion, Plaintiff informed Defendants that they were failing to supply their employees with proper equipment and protective gear for preventing occupational diseases caused by breathing air contaminated with asbestos, fumes, gases, among others, pursuant to the Occupational Safety and Health Standards "OSHA" regulations. Plaintiff complained that he was going to the doctors due to breathing and lung issues as a result of the improper and inadequate protective gear. Defendants, instead of taking to hear the complaints from Plaintiff, increased the mistreatment of Plaintiff and attempted to find excuses to fire him.

42.     For example, when Plaintiff requested two (2) days off due to back problems, Defendants instead denied his request and his manager Mohammed Rahman accused him of stealing wires and cables from the workplace and claimed that this was on video. When Plaintiff confronted Mohammed Rahman and requested to see the video, Mohammed Rahman ignored him and later admitted that there was no video. Therefore, the reasoning for denying Plaintiff those two (2) days off was purely pretextual, and Defendants were in fact punishing and retaliating against Plaintiff for his complaints regarding work safety standards and his missing wages.

43.     Defendants ultimately terminated Plaintiff on March 4, 2022. Defendants claimed that they were "downsizing" and as a result needed to let Plaintiff go, but Defendants in fact hired at least fifteen (15) more employees after Plaintiff's termination. Therefore, it is clear that Defendants given reason for firing Plaintiff was pretextual, and it was in fact because Defendants retaliated against Plaintiff for complaining about his missing wages and the lack of safety measures Defendants had taken.

44. Therefore, Defendants retaliated against Plaintiff in violation of the FLSA and NYLL by terminating him in response to his complaints against Defendants' wrongful payment of wages, unsatisfactory safety standards, and discriminatory practices.

***National Origin Discrimination Allegation***

45. Furthermore, throughout his employment, Plaintiff suffered from Defendants discriminatory practices. Plaintiff CHARLES is a Black male from Saint Vincent and during his employment with Defendants, he suffered from Defendants' discriminatory practices based on employees' national origin.

46. The managers at Defendants' job sites are primarily from Trinidad or Guyana and showed strong favoritism for their employees based on their national origin.

47. Defendants' managers utilized a biased internal caste system based on categorizations of employees by their national origin to determine their treatment. Defendants placed Trinidadian or Guyanese employees at the top of this caste system. This group of employees, who were part of Defendants' favored national origin, received employment privileges and relaxed work requirements. Conversely, at the bottom of this hierarchy, are Defendants' employees who are Hispanic and Black, such as Plaintiff CHARLES, who suffered disparate treatment and unequal opportunities.

48. Specifically, Defendants' favoritism is displayed by their policy of compensating Trinidadian and Guyanese employees with higher base wages, offering promotions and raises to the Trinidadian and Guyanese employees despite those employees' inexperience instead of the more senior employees, allowing extended vacation time, and ensuring that their employment is secured on return from an extended leave.

49.     Conversely, as much as the Trinidadian and Guyanese employees were treated favorably, Black and Hispanic employees were discriminated against and treated unfavorably in the terms and conditions of their employment. Such examples of this included Black and Hispanic employees not receiving promised pay raises despite Trinidadian and Guyanese employees obtaining them. Or if a Black or Hispanic employee complained about this broken promise of a pay raise, they risked being terminated. Furthermore, if Black or Hispanic employees were caught checking their phones, they were written up and sent home, whereas Trinidadian and Guyanese employees being caught resulted in no negative consequences.

50.     Furthermore, when a Black or Hispanic employee requested extended vacation or sick leave, Defendants would threaten them with termination, claiming that taking that many days off would mean that those employees' jobs would not be guaranteed upon return. On the other hand, when Trinidadian or Guyanese employees requested vacation or leave that lasted, for example, over a month, Defendants would wish them a happy trip and to enjoy their time and reassured them that their job would be there upon return.

51.     Specifically, as to Plaintiff, in or around December 7, 2021, Plaintiff reached out to his manager Mohammed Rahman, who was Guyanese, and requested to take a few weeks off for vacation. Upon his request, Mohammed Rahman told Plaintiff "you can leave but your job is not secure when you come back." These comments only came about because Plaintiff was a black employee that was not from Trinidad or Guyana. When Plaintiff came back from vacation in or around December 28, 2021, approximately three weeks off, Defendants told him that there was no job for him to return to.

52.     Upon being informed that he had no job to return to, Plaintiff proceeded to file for unemployment. However, when the New York State Department of Labor (NYSDOL) called

Defendants to confirm Plaintiff's unemployed status, Mohammed Rahman instead told the NYSDOL that Plaintiff was never fired. Only after that incident did Defendants call Plaintiff to reincorporate him back to work.

53.     Moreover, after discussing with his fellow colleagues regarding Defendants discriminatory practices against Black and Hispanic employees, Plaintiff and other Black and Hispanic employees informed Defendants that they observed disparate treatment between the different nationalities and asked for equal opportunities and benefits. After this, Defendants fired several of the Hispanic and Black employees that complained about Defendants discriminatory practices.

54.     Due to Defendants biased, discriminatory actions against Plaintiff and other Black and Hispanic employees, based on their national origin, Plaintiff suffered physical and emotional damages, discomfort, and humiliation while working for Defendants.

***Sexual Harassment Allegations***

55.     Furthermore, during his employment with Defendants, Plaintiff and male co-workers suffered from a hostile work environment due to the unwelcomed sexual harassment from the supervisor, Haron Khan, to which Defendants never did anything to limit, prevent, or stop.

56.     Plaintiff CHARLES is a heterosexual male. Any interaction that Plaintiff or his male co-workers had with Haron Khan (a Guyanese supervisor) ended with Haron Khan making explicit sexual comments directed towards them. Examples of such sexual harassment included:

> a) Whenever Plaintiff requested help from Haron Khan or was instructed by Defendants to inform Haron Khan on how to perform a task, Haron Khan would tell Plaintiff to "suck my dick".

b) Whenever Plaintiff was asking for help to find some tools, Haron Khan would give an answer related to his genitalia and how he wanted to receive sexual pleasure from Plaintiff. When Plaintiff requested aid in finding some wires from Haron Khan, Haron Khan replied "you want me to put hot pepper on my dick, you suck it off and then you'll find the wire."

c) On multiple occasions, Haron Khan asked Plaintiff, openly and publicly, whether Plaintiff had homosexual inclinations or fantasies. Haron Khan then later mocked and taunted Plaintiff by asking him if he wanted to "suck his dick like a lollipop."

d) After every occurrence, Plaintiff informed Mohammed Rahman that Haron Khan's behavior was extremely uncomfortable, humiliating, and was highly inappropriate for a work environment. To which, Mohammed Rahman told Plaintiff "Why Black's get offended for everything?... I am doing nothing." Mohammed Rahman proceeded to take no actions against Haron Khan or do anything to prevent such behaviors.

57. Supervisor Haron Khan did not treat or speak to any other co-workers of Plaintiff's in such a manner.

58. Due to Defendants permitting and fostering a hostile work environment due to Defendants' supervisor's constant sexual harassment, Plaintiff suffered physical and emotional damages, discomfort, and humiliation while working for Defendants.

59. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACTON
### ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

60.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

61.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

62.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

63.      At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

64.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages, including overtime, in the lawful amount for all hours worked due to a policy of time-shaving.

65.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages due to an improper policy of rounding.

66.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff the proper wages he was owed due to Defendants' policy of failing to compensate employees for short, compensable breaks of twenty (20) minutes or less, in violation of the FLSA.

67.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

68.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

69.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

70.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving, unpaid wages due to improper rounding, unpaid wages due to uncompensated short breaks, and an equal amount as liquidated damages.

71.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

### COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

72.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

73.     At all relevant times, Plaintiff and the Class members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

74.     At all relevant times, Defendants had a policy and practice of time-shaving that failed to pay Plaintiff and Class members for all hours worked.

75.     At all relevant times, Defendants had a policy and practice of improperly rounding down hours that failed to pay Plaintiff and Class members for all hours worked.

76.     At all relevant times, Defendants had a policy and practice of deducting compensable break time that failed to pay Plaintiff and Class members for all hours worked.

77.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

78.     Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees in direct violation of the New York Labor Law.

79.     Defendants failed to provide proper wage statements with every payment issued to Plaintiff and the Class members, as required by New York Labor Law § 195(3).

80.     Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages, including overtime hours, due to time shaving, unpaid wages due to invalid rounding, unpaid wages due to uncompensated short breaks, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## COUNT III

## <u>RETALIATION UNDER THE FAIR LABOR STANDARDS ACT</u>

81.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

82.     At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

83.     Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

84.     As alleged herein, Plaintiff complained to Defendants and its managers regarding Defendants invalid unpayment of wages and unsatisfactory safety protocols. In response to such complaints, Defendants terminated Plaintiff under pretextual reasons in violation of Section 15(a)(3).

85.     Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

86.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided under the FLSA.

**COUNT IV**

**RETALIATION UNDER THE NEW YORK LABOR LAW**

87.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

88.     At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL

89.     Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging him shortly after he raised his concerns about Defendants unlawful policies regarding unpaid wages and unsatisfactory safety protocols.

90.     In response to such complaints, Defendants terminated Plaintiff in violation of Section 215 (a).

91.     Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

92.     Defendants' conduct was in willful disregard of the provisions of the NYLL.

93.     As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL.

## COUNT V

## VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

94.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

95.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of national origin.

96.     Plaintiff was an employee and qualified person within the meaning of NYSHRL and Defendants are covered employers under NYSHRL.

97.     Defendants operated a business that discriminated against Plaintiff and Class members in violation of NYSHRL by discriminating against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of his employment because of his national origin in ways including, but not limited to (i) detrimental work opportunities for Plaintiff and other Black and Hispanic employees due to their national origins; (ii) passing over Plaintiff and other Black and Hispanic employees for pay raises or promotions and providing those raises or promotions to Trinidadian and Guyanese employees instead; and (iii) threatening Plaintiff and other Black and Hispanic employees job security when requesting days off or vacations, while guaranteeing Trinidadian and Guyanese employees job security on return from multi-week or months long vacations.

98.     Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of NYSHRL.

99.     As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

100.    Due to Defendants' violations under NYSHRL, based on discrimination on the basis of national origin, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

101.    Additionally, Defendants violated the NYSHRL by creating and maintaining a hostile work environment through Supervisor Haron Khan's pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff and other male co-workers.

102.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

103.    As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in forms, including specifically but without limitation. loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

**COUNT VI**

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW,**
**ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107**

104.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

105.    At all relevant times, Plaintiff was an employee within the meaning of NYCHRL and Defendants are covered employers under NYCHRL.

106.    Defendants operated a business that discriminated against Plaintiff and Class members in violation of NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his national origin in various ways, including but not limited to: (i) detrimental work opportunities for Plaintiff and other Black and Hispanic employees due to their national origins; (ii) passing over Plaintiff and other Black and

Hispanic employees for pay raises or promotions and providing those raises or promotions to Trinidadian and Guyanese employees instead; and (iii) threatening Plaintiff and other Black and Hispanic employees job security when requesting days off or vacations, while guaranteeing Trinidadian and Guyanese employees job security on return from multi-week or months long vacations.

107.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under NYCHRL.

108.    As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress

109.    Due to Defendants' violations under NYCHRL, based on discrimination on the basis of national origin, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

110.    Additionally, Defendants violated the NYCHRL by creating and maintaining a hostile work environment through Supervisor Haron Khan's pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff and other male co-workers.

111.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

112.    As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in forms, including specifically but without limitation. loss of past and future earnings, mental anguish, and pain and suffering.

113.    Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under NYCHRL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL, and NYCHRL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid compensation due to time-shaving under the FLSA and NYLL;

d.  An award of unpaid wages for compensable breaktime under the FLSA and NYLL;

e.  An award of unpaid compensation due to Defendants illegal rounding policy under the FLSA and NYLL;

f.  An award of statutory penalties as a result of Defendants' failure to comply with wage statement and notice requirements under the NYLL;

g.  An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA or NYLL;

h.  An award of back and front pay, compensatory damages, punitive damages, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the FLSA and NYLL;

i.  An award of backpay, compensatory damages, and punitive damages due under NYSHRL;

j.  An award of backpay, compensatory damages, and punitive damages due under NYCHRL;

k.  An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

l.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m.  Designation of this action as a class action pursuant to F.R.C.P. 23;

n.  Designation of Plaintiff as a Representative of the Class;

o.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 23, 2022                         Respectfully submitted,

                                            LEE LITIGATION GROUP, PLLC

                              By:     */s/ C.K. Lee*

                                      C.K. Lee (CL 4086)
                                      Anne Seelig (AS 3976)
                                      148 West 24th Street, 8th Floor
                                      New York, NY 10011
                                      Tel.: 212-465-1188
                                      Fax: 212-465-1181
                                      *Attorneys for Plaintiff, FLSA Collective*
                                      *Plaintiffs, and the Class*