**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

DEXLON CHARLES,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

                    Plaintiff,

     v.

PINNACLE TOO, LLC,                         Case No.: 1:22-cv-04232
    d/b/a PINNACLE ELECTRIC,
AGIR ELECTRICAL, LTD.,
    d/b/a PINNACLE ELECTRIC,
FRANKCRUM 6, INC.
    d/b/a FRANKCRUM,
FRANK CRUM JR.,
and ANTONY GIRONTA

                    Defendants.

_____

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR**
**FINAL CERTIFICATION OF FLSA COLLECTIVE ACTION**

Lee Litigation Group, PLLC
C. K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

# TABLE OF CONTENTS

EXHIBITS .................................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................ iv

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     RELEVENT PROCEDURAL HISTORY ......................................................... 2

III.    PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS ARE COMMON
        TO ALL COVERED EMPLOYEES ................................................................. 3

        A.      Failure to Pay Plaintiff and Opt-in Plaintiffs for All their Hours Worked ............ 3

        B.      Defendants Automatically Deducted thirty (30) Minutes from Plaintiff and Covered
                Employees Wages ............................................................................... 4

        C.      Defendants' Failed to Compensate Plaintiff and Covered Employees Their Wages,
                Including Overtime, Due to Detrimental Rounding ................................ 6

IV.     LEGAL ARGUMENT ....................................................................................... 7

        A.      LEGAL STANDARD .............................................................................. 7

        B.      Plaintiff and Opt-In Plaintiffs Share Substantially Similar "Factual and
                Employment Settings" Weighing Strongly in Favor of Final Certification of the
                Collective Action ................................................................................ 10

        C.      Because Plaintiff Cannot Speculate About Potential Individual Defenses that
                Defendants May Raise in Their Motion to Decertify, Plaintiff Will Only Address
                Such Defenses in its Opposition Thereto .............................................. 11

        D.      Considerations of Fairness and Procedure Weigh Heavily in Favor of Collective
                Treatment of Plaintiff and opt-in plaintiffs ......................................... 12

V.      CONCLUSION ................................................................................................. 13

**EXHIBITS**

**Exhibit A** – Deposition of Michelle Cardino

**Exhibit B** – Improper Rounding Policy

**Exhibit C** – Declarations of Plaintiff and opt-in Plaintiffs

| Exhibit | Name |
|---------|------|
| C1 | Alirio Zavalas Calderon |
| C2 | Andres Nicolas Mendoza Lovera |
| C3 | Angel Erasto Juarez Garcia |
| C4 | Angel Luis Mercado |
| C5 | Antonio Flores |
| C6 | Arthur Lee Pinkston |
| C7 | Bryam E Lopez Salazar |
| C8 | Calbert Nieves Castillo |
| C9 | Carlos Bravo |
| C10 | Carlos H Mejia |
| C11 | Cesar Fernandez Augusto |
| C12 | Cristian Vicente Riofrio Sarmiento |
| C13 | Damian Gurino |
| C14 | Daniel S Levy |
| C15 | Daniel Sanchez Garcia |
| C16 | Eusebio Quispe Quispe |
| C17 | Ezequiel Cuesta |
| C18 | Felix Maria Polanco Jimenez |
| C19 | Henrry Jeovanny Jara Cazorla |
| C20 | Henry Menguan |
| C21 | Herman Cando |
| C22 | Ivan Adalberto Barias Baez |
| C23 | Jonathan Carela |
| C24 | Jonathan Jesus Espinal |
| C25 | Jorge Bonilla |
| C26 | Jose Antonio Vasquez |
| C27 | José Leonardo Pena Luna |
| C28 | Jose Ponciano Tun Sirin |
| C29 | Jourdan J Phillip |
| C30 | Juan Carlos Diaz Yequez |
| C31 | Julio C Ortega |
| C32 | Julio Ramirez |
| C33 | Justin Jackson |
| C34 | Kelon Caliste |

| C35 | Leonard Peter Bain |
|-----|--------------------|
| C36 | Mahamadou G Touray |
| C37 | Marco Michael Ordonez |
| C38 | Phixely A Hyatt |
| C39 | Ramon Jaime Maisonet |
| C40 | Reynaldo Comisario |
| C41 | Ronald Dontaye Gooden |
| C42 | Sheldon Moore |
| C43 | Simeon Q Eastman |
| C44 | Tiburcio R Galan |
| C45 | Vidur Rupharain |
| C46 | Walter James Miller |
| C47 | Dexlon Charles (Plaintiff) |

**Exhibit D** – List of Class and Collective Actions Plaintiff's counsel served as lead or co-lead counsel

# TABLE OF AUTHORITIES

## CASES

*Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08 Civ. 7813, 2011 WL 4389636 (S.D.N.Y. Sept. 21, 2011) ........................................................................................................................... 8, 9

*Aros v. United Rentals, Inc.*, 269 F.R.D. 176 (D. Conn. 2010) ............................................. 9

*Ayers v. SGS Control Servs., Inc.*, No. 03 CIV. 9078, 2007 WL 646326 (S.D.N.Y. Feb. 27, 2007) .............................................................................................................. 8, 9, 12, 13

*Canelas v. World Pizza*, 2017 U.S. Dist. LEXIS 50615 (S.D.N.Y. Mar. 31, 2017)..................... 6

*Clarke v. City of N.Y.*, 2008 U.S. Dist. LEXIS 47683 (S.D.N.Y. June 16, 2008) .......................... 3

*Elfoulki v. Brannons Sandwich Shop, LLC*, No. 14-CV-5964, 2016 WL 1736203 (S.D.N.Y. May 2, 2016).......................................................................................................................... 7

*Feuer v. Cornerstone Hotels Corp.*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017).................... 11

*Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388L, 2017 WL 3841841 (E.D.N.Y. Aug. 4, 2017) ................................................................................................................................... 11

*Gordon v. Kaleida Health*, 299 F.R.D. 380 (W.D.N.Y. 2014)................................................... 6

*Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78 (D. Conn. 2009) ......................... 8, 9

*Hertz Corp. v. Myers*, 565 U.S. 930 (2011) .......................................................................... 7

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)...................................................... 12

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)............................... 12

*Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013).............................................. 7, 8, 9

*Jacob v. Duane Reade, Inc.*, No. 11-CV- 0160, 2016 WL 3221148 (S.D.N.Y. June 9, 2016) ......................................................................................................................... 8, 9, 11

*Lassen v. Hoyt Livery, Inc.*, No. 13-CV-1529, 2016 WL 7165716 (D. Conn. Dec. 8, 2016)....... 12

*McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364 (S.D.N.Y. 2014) .......................... passim

*Morano v. Intercontinental Capital Grp., Inc.*, No. 10 Civ. 2192, 2012 WL 2952893 (S.D.N.Y. July 17, 2012)....................................................................................................................... 8

*Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347 (D. Conn. 2013) ................................. 8, 9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)................................................................. 7

*Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 2, 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010)........ 8

*Perkins v. S. New England Telephone Co.*, 669 F. Supp. 2d 212 (D. Conn. 2009).................... 9

*Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417 (D.N.J. 2016) ................................................ 10

*Torres v. Gristede's Operating Corp.*, No. 04 CIV. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).................................................................................................................................... 12

*Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) ..................... 7, 12, 13

## STATUTES

29 U.S.C. § 201.................................................................................................................. 7

29 U.S.C. § 216(b) ........................................................................................................ 2, 7, 10

## RULES

Fed. R. Civ. P. 23 ............................................................................................................... 2

Fed. R. Civ. P. 23(b) ........................................................................................................... 8

**REGULATIONS**

29 C.F.R. § 785.48(b) .................................................................................................... 6

## I.    PRELIMINARY STATEMENT

Plaintiff DEXLON CHARLES on behalf of ninety-eight (98) opt-in plaintiffs now moves for "final certification" of the conditionally certified collective class. Having completed discovery as to the opt-in plaintiffs, the record convincingly demonstrates that Plaintiff and opt-in plaintiffs are "similarly situated" within the meaning of Section 216(b) of the FLSA. The factors applicable to final certification of this collective action heavily favor Plaintiff and opt-in plaintiffs.

Through a combination of employee records of the ninety-eight (98) opt-ins (comprised of punch-in and punch-out records, employee timecards, a summary of employees' times records prepared by Defendants, and payroll records), depositions of Michelle Cardino, the accountant of the Pinnacle Defendants, and affidavits from forty-eight (48) former employees, the records demonstrate that there can be no doubt that discovery supports final certification of the collective class:

- Affidavits of opt-in plaintiffs certify that employees were automatically deducted for a 30-minute meal break which was not free and clear. *See,* for example, **Exhibit C-1** at ¶ 4.
- Affidavits of opt-in plaintiffs certify that employees pay records do not reflect all clocked in hours. Employees are always rounded to their scheduled shift hours and not their actual hours worked. *See*, for example, **Exhibit C-1** at ¶ 3.
- Daily time records support the affidavits that employees suffered from daily 30-minute deductions. *See* examples in Plaintiff's Motion for Class Certification filed on September 29, 2023 [Docket 76] ("Plaintiff's Rule 23 Motion") at pp. 12-15.
- Daily time records support claims of shortfall in compensation that are derived from non-neutral rounding. *See* examples in Plaintiff's Rule 23 Motion at pp. 17-24.

Deposition testimony from Ms. Cardino is even more damning. *See* **Exhibit A** – **Deposition of Michelle Cardino ("Cardino Dep.")**, August 4, 2023. Ms.Cardino testifies that lunch breaks should not be automatically deducted from the pay records. *See Cardino Dep. at 15:7-9.* However, the wage records for all ninety-eight (98) opt-in plaintiffs demonstrate

impossible robotic precision to employees' time records, which show either a half-hour deduction (representing the meal break) deductions rounding down actual clocked in work hours to an employee's scheduled work hours. Employees are not clocked out for actual meal time but automatically deducted 30 minutes daily from the wage records. This is consistent across the records for the ninety-eight (98) opt-in plaintiffs. *See* Plaintiff's Rule 23 Motion at pp. 12-15. Employees are required to affirm at the end of every workday that they received their meal break. *See Cardino Dep.* at 119:3-8. Obviously, this is a ploy to defend against wage theft. However, even in instances when employees say they did not receive their lunch breaks, they are still deducted for such breaktime. *See* Plaintiff's Rule 23 Motion at pp. 12-15.

Although Defendants will argue that employees are not working simply because they are clocked in, according to Ms. Cardino, "once they are punched in they should be working." See Id at 20:15-20.

The paragraphs below will provide further detailed arguments regarding the common scheme of the violations that are supported by class sampling documents, deposition testimony, and forty-eight (48) affidavits of former employees. In addition, to avoid redundancy in the public records, we are referencing, in this motion, to exhibits and evidence already filed in support of Plaintiffs Motion for Class Certification under FRCP 23. Finally, as we anticipate receiving the deposition transcript of the Named Plaintiff Dexlon Charles, whose deposition was only recently completed on October 13, 2023, from Defendants, we reserve the right to utilize his testimony on the Reply for this Motion.

## II.    RELEVENT PROCEDURAL HISTORY

On September 30, 2022, Plaintiff and Defendants agreed, by stipulation, to a conditional collective certification pursuant to Fair Labor Standards Act, 29 U.S.C. § 216(b) for all

journeymen, electricians, laborers, and helpers, ("Covered Employees") employed by Defendant AGIR ELECTRICAL, LTD., d/b/a PINNACLE ELECTRIC at any time between May 23, 2019, and September 30, 2022.

On September 29, 2023, Plaintiff filed a Motion to certify class and approve class counsel. Such motion was not opposed as of October 13, 2023, the due date for such opposition.

On October 16, 2023, the parties completed FLSA collective class-wide discovery for Plaintiff and the ninety-eight opt-in plaintiffs. Plaintiff and opt-in plaintiffs now move for final certification of the FLSA collective action, consisting of the named plaintiff and ninety-eight opt-in plaintiffs whose names and consent to sue forms were provided to the Court in a letter filed by Plaintiff on January 10, 2023. *See* Plaintiff's Letter dated January 10, 2023, Docket 40.

## III.  PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS ARE COMMON TO ALL COVERED EMPLOYEES

Defendants' payroll violations affected all employees paid from Defendants' centralized payroll department. *See Cardino Dep. 5:10-25.*

### A.  Failure to Pay Plaintiff and Opt-in Plaintiffs for All their Hours Worked

Employers must compensate their employees for every hour worked. "The FLSA does not define "work," but [the Court] has interpreted that word to mean "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."" *Clarke v. City of N.Y.*, 2008 U.S. Dist. LEXIS 47683, at *8 (S.D.N.Y. June 16, 2008). Defendants failed to pay wages for all hours worked by the FLSA Collective due to a policy of time shaving. Defendants' records clearly show significant disparities exist between the Collective Class ' actual punches and the wages paid by Defendants. Plaintiff and opt-in Plaintiffs' paystubs do not reflect the accurate hours accrued. It is

3

clear that Defendants routinely failed to properly compensate Plaintiff and opt-in Plaintiffs, for all hours worked, including overtime premiums, due to Defendants' policy of time-shaving.

Forty-seven (47) affidavits have been submitted to support the Collective Class' experiences with Defendants' policy of timeshaving. *See* **Exhibit C** – **Declarations of Plaintiff and opt-in Plaintiffs**. Plaintiff and opt-in Plaintiffs' timecards and pay records indicate a consistent failure by Defendants to account for all hours worked. Defendants willfully and knowingly failed to compensate *all* hours Plaintiff and opt-in plaintiffs worked. The FLSA collective data provided in Defendants' own discovery clearly and undeniably shows that Defendants' improper timeshaving methods harmed the entire FLSA Collective. For specific examples of Defendants' consistent violations, a sampling limited to one example per individual for the Court's consideration is available in Plaintiff's Rule 23 Motion at pp. 3-10. Defendants will argue that just because employees are clocked-in does not mean they are working but Defendants' own witness, Ms. Cardino, testifies that "once [employees] punch-in they should be working". *See Cardino Dep.* 20:9-21:3.

### B. Defendants Automatically Deducted thirty (30) Minutes from Plaintiff and Covered Employees Wages

In addition to failing to pay for all hours worked by Plaintiff and opt-in Plaintiffs, due to timeshaving, Defendants also failed to compensate Plaintiff and opt-in Plaintiffs for all hours worked by deducting a thirty (30) minute lunch break from **every shift** longer than six (6) hours worked by any Plaintiff and opt-in Plaintiffs. Plaintiff and opt-in Plaintiffs were constantly required to work through their breaks, at their supervisors' instructions or due to the interruption of their breaks by deliveries. The interruption of breaks results in unpaid wages for two and a half (2.5) hours every week. Defendants did not maintain records of Plaintiff and opt-in Plaintiffs clocking-in and out for meal breaks. Instead, Defendants, simply and illegally, automatically

deducted thirty (30) minutes per shift from every employee's worked hours, resulting in a gross deduction of pay every week. In fact, Defendants deduct the thirty (30) minute lunch break from Plaintiff and opt-in Plaintiffs' wages even when they have undisputable documented proof that their employees did not actually take the break. The FLSA Collective wide discovery provided by Defendants shows that the automatic meal break deduction was applied to every single opt-in plaintiff. According to Pinnacle Defendant's witness and accounting person in charge of payroll Michelle Cardino, Plaintiff and opt-in Plaintiffs are required to clock out upon taking their breaks. *See Cardino Dep.* at 14:12-19. However, Ms. Cardino explains that if an employee does not clock out for their lunch break, the thirty (30) minute lunch break "shouldn't be" deducted from their pay record. *Id* at 15:1-19. As can be seen from the records below, Defendants implement an auto-deduct process even though Ms. Cardino said it would be violative of Defendants' own internal policies. *Id*.

Defendants failed to compensate Plaintiff and opt-in Plaintiffs for all hours worked due to their illegal policy of automatically deducting a thirty (30) minute meal break from every shift, regardless of whether the break was taken by Plaintiff and opt-in Plaintiffs. *See* Plaintiff's Rule 23 Motion at pp. 12-15. At the end of every shift, every Plaintiff and opt-in Plaintiff is required to fill out a questionnaire, which includes the question "Did you take all of your meals and breaks?". Whether Plaintiff and opt-in Plaintiffs respond by "yes" or "no", Defendants automatically deduct thirty (30) minutes from their wages. For specific examples of Defendants' consistent violations, a sampling limited to one example per individual for the Court's consideration is available in Plaintiff's Motion for Class Certification filed on September 29, 2023 [Docket 76] at pp. 12- 15.

**C. Defendants' Failed to Compensate Plaintiff and Covered Employees Their Wages, Including Overtime, Due to Detrimental Rounding**

Federal regulations state that "…there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. … For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *See* 29 C.F.R. § 785.48(b). Pursuant to the FLSA, any policy of rounding employee hours that "result[s], over a period of time, in failure to compensate the employees properly for all the time they have actually worked" is in violation of both the FLSA. *See* 29 C.F.R. § 785.48(b); *Gordon v. Kaleida Health*, 299 F.R.D. 380, 405 n.25 (W.D.N.Y. 2014); *see also Canelas v. World Pizza*, 2017 U.S. Dist. LEXIS 50615, at *25 (S.D.N.Y. Mar. 31, 2017).

Defendants had an improper policy of rounding down Plaintiff and opt-in Plaintiffs' hours. *See* **Exhibit B – Improper Rounding Policy**; *see also* Charles Decl. ¶¶ 15-19. As can be seen in **Exhibit B**, Defendants' policy specifically indicates Plaintiff and opt-in Plaintiffs should only be paid for their scheduled hours as opposed to their worked hours, "[w]orkers' time will be rounded to the exact beginning and end of the shift". *Id*. Defendants' policy indicates that Plaintiff and opt-in Plaintiffs who clock-in between 6:10 AM and 7:10 AM will be rounded to 7:00 AM. *Id*. The failure to round in a net-neutral manner is evident on its face. *Id*. In accordance with Defendants' policy, Plaintiff and opt-in Plaintiffs punch times can be rounded up-to fifty (50) minutes to their detriment. Conversely, their punch times will only ever be rounded up-to ten (10) minutes in their favor. *Id*. This further proves that Defendants' rounding down policy is not only improper but also general and applicable to all Plaintiff and opt-in Plaintiffs. *Id*. 29 C.F.R. § 785.48(b), permit rounding only when the policy "will not result, over a period of time, in failure to compensate the

employees properly for all the time they have actually worked." However, in this case, Defendants only rounded employees' hours to the employers' benefit, thus utilizing an impermissible rounding policy. Charles Decl. ¶15-17. Defendants applied this improper rounding policy to every opt-in plaintiff. For specific examples of Defendants' consistent violations, a sampling limited to one example per individual for the Court's consideration is available in Plaintiff's Rule 23 Motion at pp.17-24.

## IV.    LEGAL ARGUMENT

### A.    LEGAL STANDARD

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., provides for "similarly situated" employees to proceed collectively in pursuit of unpaid wages. *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 366 (S.D.N.Y. 2014). The Court of Appeals for the Second Circuit adopted a "two-step method" in determining whether a case should be certified as a collective action under Section 216(b). *Id.* at 366-67 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010), cert. denied, 565 U.S. 930 (2011)). In the second stage after discovery is complete, the court decides if the "collective action may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* at 367 (citing *Myers*, 624 F.3d at 555). The burden is on the named plaintiff to prove that the "other employees are similarly situated." *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 639 (S.D.N.Y. 2013) (citing *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011)). A plaintiff may meet its burden of proof by a preponderance of the evidence. *Elfoulki v. Brannons Sandwich Shop, LLC*, No. 14-CV-5964, 2016 WL 1736203, at *2 (S.D.N.Y. May 2, 2016). "'If the record shows all putative class members are similarly situated, the conditional aspect is removed, the collective action is finally certified, and the matter proceeds to trial." *McGlone*,

49 F. Supp. 3d at 367 (quoting *Morano v. Intercontinental Capital Grp., Inc.*, No. 10 Civ. 2192, 2012 WL 2952893, at *6 (S.D.N.Y. July 17, 2012)). The requirement that the opt-in plaintiffs be "similarly situated is considerably less stringent than the requirement of Fed. R. Civ. P. 23(b)(3) that common questions 'predominate." *Id.* (citing *Alonso v. Uncle Jack's Steakhouse*, Inc., No. 08 Civ. 7813, 2011 WL 4389636, at *3 (S.D.N.Y. Sept. 21, 2011)). The only requirement is "'a persuasive showing that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically applied company policy or practice such that there exist common questions of law and fact that justify representational litigation.'" *Id.* (quoting *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 2, 2010 WL 3564426, at 4 (S.D.N.Y. Sept. 7, 2010)). Courts in this Circuit generally look to the following three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* (quoting *Morano*, 2012 WL 2952893, at *5); *see also Jacob v. Duane Reade, Inc.*, No. 11-CV- 0160, 2016 WL 3221148, at *7 (S.D.N.Y. June 9, 2016) (using same factors); *Indergit*, 293 F.R.D. at 639 (using same factors).

As to the first factor, "[a]t the second stage, the 'plaintiffs need show <u>only</u> that their positions are similar, not identical, to the positions held by the putative class members.'" *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 361 (D. Conn. 2013) (emphasis original) (quoting *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 83 (D. Conn. 2009)); *see also Ayers v. SGS Control Servs., Inc.*, No. 03 CIV. 9078, 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007) (same). Courts examine the plaintiffs' and opt-in plaintiffs' job descriptions, training, primary duties, and procedures. *See, e.g., Jacob*, 2016 WL 3221148, at *6, 8; *Morrison*, 290 F.R.D. at 361; *Indergit*, 293 F.R.D. at 650. Moreover, an outlier in a group is insufficient to defeat certification.

*Jacob*, 2016 WL 3221148, at *4 (citing *Indergit*, 293 F.R.D. at 644). "One of the factors material to many courts' analysis of the plaintiffs' factual and employment settings is whether they were all impacted by a 'single decision, policy, or plan." *Ayers*, 2007 WL 646326, at *5; *see also Jacob*, 2016 WL 3221148, at *6 (recognizing appropriate inquiry is whether "the original and opt-in plaintiffs were subject to a systematically-applied company policy or practice"); *McGlone*, 49 F. Supp. 3d at 368 (recognizing appropriate inquiry into "single, decision, policy, or plan").

Differences between opt-in plaintiffs concerning the amount of uncompensated hours actually worked is a matter of damages and "'will not warrant decertification as long as plaintiffs show they are subject to a 'single decision, policy, or plan.'" *McGlone*, 49 F. Supp. 3d at 368 (quoting *Alonso*, 2011 WL 4389636, at *3). In other words, "individualized inquiries into damages do not warrant decertification." *Id*. at 369. In sum, "[a] collective action should be certified if, 'on balance, the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected.'" *Morrison*, 290 F.R.D. at 361 (quoting *Perkins v. S. New England Telephone Co.*, 669 F. Supp. 2d 212, 218 (D. Conn. 2009)); *see also Ayers*, 2007 WL 646326, at *5 (recognizing balancing test).

Importantly, at the second step of certification, "a court need not judge the merits of the plaintiffs' claims because they are irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their claim." *Morrison*, 290 F.R.D. at 361 (quoting *Hendricks*, 263 F.R.D. at 83); *see also Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 179 (D. Conn. 2010) (explaining that "[a]t the first stage of the FLSA certification process (as well as at the second stage), courts do not address the merits of the claims in the case. The determination of whether an employee was properly compensated goes to the merits of the claims, not whether they are

amenable to class-wide resolution. A defendant is able to address the merits of the exemption subsequently in the case, such as on a motion for summary judgment or at trial. *See Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417, 423 (D.N.J. 2016) (finding plaintiffs similarly situated on plaintiffs' motion for final certification and directing defendant to raise merits of FLSA overtime exemption on motion for summary judgment).

As detailed above, Plaintiff and opt-in plaintiffs experienced violations from Defendants' practices. Beyond the clear payroll violations, the forty-seven declarations establish that all Covered Employees working for Defendants similarly suffered from Defendants' policies of timeshaving and detrimental rounding, which resulted in unpaid wages, including overtime. **Exhibit B**.

### B. Plaintiff and Opt-In Plaintiffs Share Substantially Similar "Factual and Employment Settings" Weighing Strongly in Favor of Final Certification of the Collective Action

Here, there is no dispute that Defendants always uniformly time-shaved and improperly rounded plaintiff and all opt-in plaintiffs' hours. *See* Plaintiff's Motion for Class Certification.

Discovery revealed a substantial congruency between Plaintiff and opt-in plaintiffs in terms of fundamental job conditions, training, duties, and responsibilities, such that they are clearly "similarly situated" for purposes of a collective action under Section 216(b) of the FLSA. Plaintiff and opt-in plaintiffs were all paid hourly, required to punch-in and punch-out through a uniform system, and required to fill in the same questionnaire forms at the beginning and end of each shift. Additionally, Plaintiff and opt-in plaintiffs all suffered from Defendants' policy of automatically deducting thirty (30) minutes from Plaintiff and opt-in plaintiffs' wages for every shift worked for a period longer than six (6) hours. Finally, Plaintiff and opt-in plaintiffs were all subject to Defendants' rounding policy, described above. *See* Plaintiff's Motion for Class Certification.

Plaintiff and opt-in plaintiffs were all manual workers, specializing in electrical utilities installations. Plaintiff and opt-in Plaintiffs were also all under the supervision of foremen and supervisors, who directed and managed their work on a daily basis, who controlled their breaktime and were even in charge of recording their hours on Defendants' system. Plaintiff and opt-in plaintiffs were additionally uniformly bound by the same Employee Handbook provided by Defendants.

The affidavits of Plaintiff and opt-in plaintiffs unsurprisingly reveal that they share substantially similar job duties and responsibilities all focused on construction and utility installments, weighing in favor of substantial similarity under the FLSA. *See, e.g., Jacob,* 2016 WL 3221148, at 2-3. They all worked on construction sites on a daily basis.

That Plaintiff and opt-in-plaintiffs may have differing amounts of recoverable damages based on differing totals of overtime worked does not warrant decertification; that is a matter of damages. *McGlone*, 49 F. Supp. 3d at 368. Based on the foregoing, the first factor weighs heavily in favor of granting Plaintiff's and opt-in plaintiffs' motion for final certification.

### C. Because Plaintiff Cannot Speculate About Potential Individual Defenses that Defendants May Raise in Their Motion to Decertify, Plaintiff Will Only Address Such Defenses in its Opposition Thereto

Prior to Defendants filing their motion to decertify this collective action, Plaintiff cannot intelligently address the potential defenses individual to the opt-in plaintiffs that Defendants may or may not raise. Nor should Plaintiff be obligated to preemptively raise defenses and rebut them. *Cf. Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388L, 2017 WL 3841841, at *12 (E.D.N.Y. Aug. 4, 2017) (explaining in FLSA case that "defendant seeking to rely on an affirmative defense has the burden of proof with respect to that defense, and must meet that burden by a preponderance of the evidence"), report adopted, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017). Plaintiff,

therefore, will appropriately address any individual defenses raised by AT&T in its opposition to AT&T's motion to decertify.  *Cf. Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (recognizing the "second step is typically initiated by a defendant filing a motion for decertification").

**D.  Considerations of Fairness and Procedure Weigh Heavily in Favor of Collective Treatment of Plaintiff and opt-in plaintiffs**

An "FLSA collective action allows plaintiffs to take 'advantage of lower individual costs to vindicate rights by the pooling of resources,' and allows the judicial system to benefit by 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged violation.'" *McGlone*, 49 F. Supp. 3d at 369 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  Where "common questions predominate and individual issues may be resolved separately, . . . on balance, the policy objectives of reducing cost and increasing efficiency are best furthered by granting collective action without undue prejudice to any party." *Ayers*, 2007 WL 646326, at *6 (quoting *Torres v. Gristede's Operating Corp.*, No. 04 CIV. 3316, 2006 WL 2819730, at *11 (S.D.N.Y. Sept. 29, 2006)). Only where "there appear to be very few common issues of fact" and the testimony of the opt-in plaintiffs "cannot fairly be extrapolated" to all the opt-ins, will the Courts consider that no efficiency is gained through the collective action approach. <u>*Zivali*</u>, 784 F. Supp. 2d at 468-69; *see also Lassen v. Hoyt Livery, Inc.*, No. 13-CV-1529, 2016 WL 7165716, at *15 (D. Conn. Dec. 8, 2016) (holding decertification inappropriate where "plaintiffs' claims center on common issues of law or fact regarding defendants' uniform practices and policies").

For example, in *McGlone*, 49 F. Supp. 3d at 369, this Court held that where nineteen plaintiffs opted in to the FLSA overtime wage action, "[l]itigating overtime claims for each of these Plaintiffs individually would be burdensome on Plaintiffs, Defendants, and the courts."

Conversely, in *Zivali*, 784 F. Supp. 2d at 459, 468-69, the court held that where the testimony of the "29 randomly selected opt-in plaintiffs" was not representative and could not be fairly extrapolated to the 4,100 opt-in plaintiffs, considerations of fairness and procedural efficiency weighed in favor of decertification.

Here, fairness and procedural considerations weigh very heavily in favor of granting final certification of the FLSA collective action. Proceeding as a collective action would allow the ninety-eight opt-in plaintiffs take advantage of the lower individual costs of vindicating their rights to proper pay infringed upon by Defendants' identical violation. Perhaps most significantly, the opt-in collective consists of ninety-eight opt-in plaintiffs, Defendants produced documents for all of them, and Counsel to Plaintiff analyzed data on their behalf. It would, therefore, make little, if any, sense to have each opt-in plaintiff bring an individual action for his FLSA overtime claim and once again participate in identical discovery. Thus, decertification would actually result in gross inefficiency and prejudice to not only the opt-in plaintiffs, but to Defendants as well, which would be required to re-litigate the same ninety-eight claims individually. *See Ayers*, 2007 WL 646326, at 6.

Accordingly, the third factor of fairness and procedural considerations weighs very heavily in favor of granting Plaintiff's and opt-in plaintiffs' motion for final certification.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's and opt-in plaintiffs' motion for final certification of this FLSA collective action.

Date:  October 16, 2023                           Respectfully submitted,
       New York, New York

                                                  **LEE LITIGATION GROUP, PLLC**

                                   By:  /s/ *CK Lee*
                                        C.K. Lee, Esq.
                                        C.K. Lee (CL 4086)
                                        Anne Seelig (AS 3976)
                                        148 West 24th Street, Eight Floor
                                        New York, NY 10011
                                        Tel.: (212)465-1180
                                        Fax: (212)465-1181

                                        *Attorneys for Plaintiff, FLSA Collective*
                                        *Plaintiffs, and the Class*